UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CASEY MINZENBERGER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMERICAN CAMPUS COMMUNITIES, ) <br> INC., CYDNEY DONNELL, BILL ) <br> BAYLESS, HERMAN BULLS, STEVE ) <br> DAWSON, MARY C. EGAN, ALISON ) <br> HILL, CRAIG LEUPOLD, OLIVER LUCK, ) <br> PAT OLES, and JOHN T. RIPPEL, ) <br> ) <br> Defendants. ) | Case No. _____ <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by plaintiff's undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to plaintiff, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on April 19, 2022 (the "Proposed Transaction"), pursuant to which American Campus Communities, Inc. ("ACC" or the "Company") will be acquired by affiliates of Blackstone Funds.

2. On April 18, 2022, ACC's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Abacus Parent LLC, Abacus Merger Sub I LLC, Abacus Merger Sub II LLC, and American Campus Communities Operating Partnership LP. Pursuant to the terms of the Merger Agreement, ACC's stockholders will receive $65.47 in cash for each share of ACC common stock they own.

3. On May 10, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of ACC common stock.

9. Defendant ACC is a Maryland corporation and a party to the Merger Agreement. ACC's common stock is traded on the New York Stock Exchange under the ticker symbol "ACC."

10. Defendant Cydney Donnell is Chairperson of the Board of the Company.

11. Defendant Bill Bayless is Chief Executive Officer and a director of the Company.

12. Defendant Herman Bulls is a director of the Company.

13. Defendant Steve Dawson is a director of the Company.

14. Defendant Mary C. Egan is a director of the Company.

15. Defendant Alison Hill is a director of the Company.

16. Defendant Craig Leupold is a director of the Company.

17. Defendant Oliver Luck is a director of the Company.

18. Defendant Pat Oles is a director of the Company.

19. Defendant John T. Rippel is a director of the Company.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

21. ACC is the largest owner, manager and developer of high-quality student housing communities in the United States.

22. The Company is a fully integrated, self-managed and self-administered equity real estate investment trust with expertise in the design, finance, development, construction management and operational management of student housing properties.

23. As of December 31, 2021, American Campus Communities owned 166 student housing properties containing approximately 111,900 beds.

24. On April 18, 2022, ACC's Board caused the Company to enter into the Merger Agreement.

25. Pursuant to the terms of the Merger Agreement, ACC's stockholders will receive $65.47 in cash per share.

26. According to the press release announcing the Proposed Transaction:

> American Campus Communities, Inc. (NYSE: ACC) ("ACC" or the "Company"), the largest developer, owner and manager of high-quality student housing communities in the United States, today announced that it has entered into a definitive agreement under which Blackstone Core+ perpetual capital vehicles, primarily comprised of Blackstone Real Estate Income Trust, Inc. ("BREIT"), alongside Blackstone Property Partners ("BPP"), will acquire all outstanding shares of common stock of ACC for $65.47 per fully diluted share in an all-cash transaction valued at approximately $12.8 billion, including the assumption of debt.
>
> The purchase price represents a premium of 22 percent to the 90-calendar day volume-weighted average share price ending April 18, 2022, a premium of 30 percent over the closing stock price of February 16, 2022, the date immediately prior to the Company disclosing receipt of an indication of willingness to offer to acquire the Company, and a 14 percent premium to yesterday's closing price. . . .
>
> The transaction has been unanimously approved by ACC's Board of Directors and the independent Special Committee of ACC's Board and is expected to close in the third quarter of 2022, subject to approval by ACC's shareholders and other customary closing conditions.
>
> Advisors
>
> BofA Securities is serving as ACC's lead financial advisor. KeyBanc Capital Markets Inc. is also acting as a financial advisor. Dentons US LLP is serving as the Company's legal counsel.
>
> Wells Fargo Securities LLC, J.P. Morgan Securities LLC and TSB Capital Advisors are serving as Blackstone's financial advisors, and Simpson Thacher & Bartlett LLP is acting as Blackstone's legal counsel.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

27. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

28. As set forth below, the Proxy Statement omits material information.

4

29. First, the Proxy Statement omits material information regarding the Company's financial projections.

30. The Proxy Statement fails to disclose: (i) all line items used to calculate the projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics

31. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

32. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, BofA Securities ("BofA").

33. With respect to BofA's Selected Precedent Transaction Analysis, the Proxy Statement fails to disclose: (i) the closing dates for the transactions; and (ii) the total values of the transactions.

34. With respect to BofA's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values used in the analysis; and (ii) the individual inputs and assumptions underlying the discount rates, growth rate, and multiples used in the analysis.

35. With respect to BofA's price targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

36. With respect to BofA's research analyst analysis, the Proxy Statement fails to disclose: (i) the individual net asset values per share used in the analysis; and (ii) the sources thereof.

37. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed.

38. Third, the Proxy Statement fails to disclose the terms of KeyBanc Capital Markets Inc.'s ("KeyBanc") engagement, including: (i) the amount of compensation KeyBanc has received or will receive in connection with its engagement; (ii) the amount of KeyBanc's compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether KeyBanc has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by KeyBanc for providing such services.

39. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

40. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and ACC**

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. ACC is liable as the issuer of these statements.

43. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

6

44. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

46. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

47. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

49. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of ACC within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of ACC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

7

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

53. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

8

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: May 20, 2022                    **RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: gms@rl-legal.com

*Attorneys for Plaintiff*